IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Levon Mintz, a/k/a Lavon Mintz, #303362, | ) C/A No.: 1:11-1270-JFA-SVH |
| | ) |
| | ) |
| Petitioner, | ) |
| | ) REPORT AND RECOMMENDATION |
| vs. | ) |
| | ) |
| Warden Wayne C. McCabe, Warden of Lieber Correctional Institution, | ) |
| | ) |
| | ) |
| Respondent. | ) |

Petitioner Levon Mintz, a/k/a Lavon Mintz is an inmate at the Lieber Correctional Institution of the South Carolina Department of Corrections who, through counsel, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment and return. [Entry #18, #19]. Petitioner requested, and the court granted, two extensions to file a response to the motion for summary judgment. [Entry #22, #23, #24 and #25]. Petitioner timely filed his response on November 23, 2011. [Entry #26].

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.      Factual and Procedural Background

Petitioner and Alfredo Lewis ("the victim") verbally argued in an Orangeburg, South Carolina, nightclub on December 9, 2002. After exiting the nightclub, the victim

and Petitioner's friend, Andre Gooden, were arguing in the parking lot when Petitioner shot the victim twice. The victim later died. Witnesses identified Petitioner as the shooter, and he was apprehended two days later. Petitioner was indicted by the Orangeburg County grand jury during the May 2003 term of court for murder [Entry #19-3 at 57-58]. He was represented by Glenn Walters, Esq. at a jury trial on April 19, 2005 before the Honorable James C. Williams, Jr. [Entry #19-1 at 4]. The jury found Petitioner guilty of murder and Judge Williams sentenced Petitioner to 50 years. [Entry #19-3 at 42, 53]. There was no direct appeal.

Petitioner filed an application for post-conviction relief ("PCR") on September 26, 2005, as amended, in which he alleged ineffective assistance of trial counsel and due process and constitutional violations. [Entry #19-3 at 60-85]. A PCR evidentiary hearing was held before the Honorable Perry M. Buckner on August 6, 2008, at which Petitioner and his counsel, Robert E. Hood, Esq. appeared. [Entry #19-3 at 92]. On September 3, 2008, the PCR court issued an order granting Petitioner permission to seek a belated direct appeal and denying Petitioner's other grounds for relief. [Entry #19-4 at 75-84]. Thereafter, Petitioner filed a Rule 59(e), SCRCP, Motion to Alter or Amend on September 24, 2008 [Entry #19-4 at 85-86], which was dismissed on October 6, 2008. [Entry #19-4 at 90-91].

Petitioner timely appealed and was represented by Appellate Defender Katherine H. Hudgins who filed a petition for writ of certiorari on July 1, 2009 to review the PCR court's order of dismissal and an *Anders* brief regarding Petitioner's belated direct appeal. [Entry

#19-7, #19-8].   The petition raised the following issues: (1) Did the PCR judge correctly find that Petitioner was entitled to seek a belated direct appeal pursuant to *White v. State*? and (2) Did the PCR judge err in refusing to find counsel ineffective in stipulating to portions of the pathologist's report as it related to cause of death but failing to include in the stipulation evidence that the decedent was under the influence of cocaine and alcohol? [Entry #19-7 at 3].   The *Anders* brief raised the following issue: "Did the judge err in refusing to charge the jury on the lesser included offense of voluntary manslaughter?" [Entry #19-8 at 4].

On July 17, 2009, Petitioner, while represented by counsel, attempted to file a pro se document entitled "Petition to Relieve Counsel and Appoint New Counsel" [Entry #19-9], which the court denied on July 28, 2009 [Entry #19-11].   That same day, Petitioner filed pro se briefs in both the PCR appeal and in the belated direct appeal. [Entry #19-12, #19-13].   On October 25, 2010, the South Carolina Supreme Court denied certiorari on Petitioner's PCR appeal and granted certiorari on his belated direct appeal pursuant to *White v. State*, dispensed with further briefing and denied the appeal pursuant to the *Anders* procedure. [Entry #19-15]. The remittitur was issued on November 10, 2010. [Entry #19-16].

On November 8, 2010, during the pendency of his PCR appeal and belated direct appeal, Petitioner attempted to file a state habeas corpus action in the original jurisdiction of the South Carolina Supreme Court.   [Entry #19-17].   On December 1, 2010, the South

Carolina Supreme Court dismissed Petitioner's state habeas corpus petition. [Entry #19-18].

Petitioner, through counsel, filed this federal petition for a writ of habeas corpus on May 26, 2011.   [Entry #1].

On September 20, 2011, Petitioner filed a motion to stay the federal habeas petition, pending exhaustion of a second PCR application that Petitioner had filed in state court. Although a Conditional Order of Dismissal was filed in the second PCR action on June 16, 2011, Petitioner argued that this habeas petition should be held in abeyance to allow him to pursue the claims raised in his second PCR, citing *Rhines v. Weber*, 544 U.S. 269 (2005). As an initial matter, *Rhines* is applicable to mixed habeas petitions, which the instant petition is not. In opposing the motion to stay, Respondent argued that Petitioner's current federal habeas claims are exhausted, but that the claims Petitioner seeks to add are barred or otherwise not cognizable claims in a federal habeas corpus action. It appearing that Petitioner's second PCR application was dismissed on May 25, 2012,[1] according to the online records of South Carolina Judicial Department, the undersigned recommends the motion to stay [#17] be denied as moot.

---

[1]  *See* Orangeburg County Public Index, http://www.orangeburgcounty.org/ scjdweb/publicindex (last visited August 1, 2012) (Case No.: 2010CP3801698)

II.    Discussion

A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following grounds:

Ground One:    Petitioner's Fifth and Fourteenth Amendment rights were violated by the trial court's failure to charge the jury on the lesser-included offense of voluntary manslaughter.

Supporting facts: Petitioner was charged with murder following the shooting death of the victim, Alfredo Lewis. At trial, the State introduced evidence that the Petitioner was engaged in multiple verbal altercations with the victim immediately prior to the shooting. In response to this evidence, the Petitioner requested that the trial judge charge the jury on the lesser-included offense of voluntary manslaughter. The trial judge denied this request, thereby denying the Petitioner the due process of law.

Ground Two:    Petitioner's Fifth, Eighth and Fourteenth Amendment rights were violated by the prosecutor's comments during closing arguments that the Petitioner could have introduced evidence but chose not to do so.

Supporting facts: At trial, the State introduced evidence that an eyewitness, Cotina Brooks, gave an oral statement to the police that was recorded and turned over to the defense in discovery. During closing argument, the State, over the Petitioner's objection, argued that the Petitioner could have introduced the evidence, thereby unconstitutionally commenting on the Petitioner's right to remain silent and right not to present a defense.

Ground Three:    Petitioner's right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, was violated by trial counsel's failure to require that the Victim's toxicology results be included in the stipulation to the jury pertaining to the pathologist's report.

Supporting facts: At trial, defense counsel stipulated that the pathologist concluded that the victim died as a result of his gunshot

wounds. However, defense counsel did not require that the jury be informed that the victim was under the influence of cocaine and alcohol at the time of his death. This evidence would have made the Petitioner's request for a voluntary manslaughter charge even stronger. Defense counsel's failure to require that the toxicology portion of the pathologist's report be included in the stipulation to the jury constituted ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments.

[Entry #1 at 5-8].

B.      Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362,

398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[2] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts

---

[2]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

before requesting a writ of habeas corpus in the federal courts.   *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

b.       Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.   As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

      3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited

circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

      D.     Analysis

          1.     Procedurally-Barred Grounds

The parties agree that Petitioner's Ground One is procedurally-barred to the extent that it was not raised in his direct appeal or PCR appeal. [Entry #26 at 5]. Therefore, the undersigned does not address Ground One. As to Ground Two, Petitioner has withdrawn any reliance on the Eighth Amendment for his argument [Entry #26 at n. 2] and the parties agree that it is limited to the scope of the arguments presented to the trial court and to the South Carolina Supreme Court on the belated direct appeal.

2.      Merits Review of Ground Two

In the remaining portion of Ground Two, Petitioner argues that his Fifth and Fourteenth Amendment rights were violated by the solicitor's comments during closing arguments that Petitioner could have introduced evidence, but chose not to do so.

At trial, the state introduced evidence that an eyewitness, Cotina Brooks, gave an oral statement to police detective Bobby Rivers that was recorded and turned over to the defense in discovery.   During defense counsel's re-cross-examination of Brooks, defense counsel intimated that he never received a written statement from Brooks, to wit: "I just want to be clear, because we've got one version of what happened that you're stating in this courtroom today, and we've got another version on January twenty-seventh of two thousand and three, and you're also telling me that you've got a written statement, a statement that we've never seen, that you say you gave to detective Rivers and you've got a copy." (App. 187).

Detective Rivers was later called to the stand and testified on cross-examination as follows:

Defense:     Alright. And let's first start with Cotina Brooks.   She indicated she gave you a statement.   Have you got a copy of that statement inside that file?
Rivers:       No, I don't.
Defense:     What happened, you lost it?
Rivers:       I never had a statement from her.
Defense:     Do you understand, when we serve a Rule Five, and I believe your testimony was that you've been with DPS for sixteen years, fourteen years with public safety, I'm sorry, sixteen years as an officer, a criminal investigator, and you were trained to give detailed statements, and sever years as a detective, is that correct?
Rivers:       Yes, it is.

14

| Defense:   | And you've probably been served thousands of times with a Rule Five from a lawyer, that says, give me a copy of everything that you intend to introduce to this court, is that right? |
|------------|---|
| Rivers:    | Yes, it is. |
| Defense:   | Alright. Any evidence that may be exculpating, that may be brought up with regards to this case, isn't that right? |
| Rivers:    | Yes. |
| Defense:   | And you're telling this jury that you received a statement from a witness that testified in this case, who's given two or three contrary statements, and you've lost the statement? |
| Rivers:    | No, I didn't lose the statement. |
| Defense:   | What are you saying, that Ms. Brooks is lying, yes, or no? |
| Rivers:    | I can't answer that, I can only answer for what you asked me. I didn't lose the statement. |
| Defense:   | My question is real simple. She said she gave you a statement. Did she give you a statement? |
| Rivers:    | Yes, she gave me a statement. |
| Defense:   | What did you do with the statement, where is it? |
| Rivers:    | It's right there on the table. |
| Defense:   | No, sir, I asked you, where is the written statement she said that she lost. She's moved three or four times this year. She said she gave you a copy of that statement. Where is that statement? |
| Rivers:    | I never received a written statement from Ms. Brooks. |
| Defense:   | So, Ms. Brooks is lying, is that correct, your own witness is lying? |
| Solicitor: | Object, Your Honor, to pitting, he's pitting. |
| Court:     | I sustain the objection. |
| Solicitor: | Thank you. |

[Entry #19-2 at 45-47].

. . .

| Defense:   | Where is that statement from Cotina Brooks that she has written? |
|------------|---|
| Rivers:    | The day that I interviewed Ms. Brooks, it was at her job. I asked her than I needed a detailed statement. She told me that she would be, feel more freely if I was to write the statement. So, I wrote the statement, and that's the one that we have in front of us. |
| Defense:   | You wrote a statement for Cotina Brooks? Show me the statement, show me the statement that you wrote for Cotina Brooks, pull it out your file right now, pull it out. Open your file, that's what you're relying on, show me the statement that you wrote to Cotina Brooks. |
| Solicitor: | Let him answer the question, Your Honor, objection. |

| | |
|---|---|
| Defense: | Show me the statement. Show me the statement you wrote for her, show it to me right now. You claim you wrote it for her, let's see it, pull it out that file. |
| Solicitor: | Well, let him show it to you. |
| Defense: | Go ahead, it's right in front of you. |
| The Court: | Alright, Mr. Walters, let him answer the question. |
| Solicitor: | Here, do you want to give him my copy? |
| Rivers: | Yeah, that's more quicker, let me use his copy. |
| Solicitor: | Yeah. |
| Defense: | Your Honor, I object to the solicitor attempting to answer for this witness. He's on the stand, and I asked him a question, he's supposed to respond to it. |
| Solicitor: | I object to --- |
| Defense: | I ask that the Court |
| The Court: | Alright, both of you shut up, and sit down, both of you. This is ridiculous. Officer, look wherever you to need to look, in your file or the solicitor's file, the quickest place you can find the statement to which you are referring. |
| Rivers: | My file or the solicitor's file? |
| The court: | Yes, sir. |
| Rivers: | We have it, sir. |
| The court: | Alright. Now, Mr. Walters. |
| Defense: | Show me the statement that you wrote. Is that the statement? |
| Rivers: | Yes, it is. |
| Defense: | This is a typed statement. Where is the statement you wrote? That's what I'm asking for, you said you wrote a statement, you were on her job, show me the written statement. |
| Rivers: | If I can remember and recall correctly on that date, what we did, we, we taped her when we interviewed her, and I went back to the office along with one of my co-workers, and we listened to the tape, and we transcribed it, typed it, sir. |
| Defense: | Do you, or don't you have the written statement? |
| Rivers: | There never was a written statement. We interviewed her and we taped it. |
| Defense: | Which version of your story do you want me to believe? You just told me you interviewed her at work and you had written down her statement. I asked you for a copy of that written statement. Is your testimony now that it never was a written statement, and that you taped her? Which one is true, which one is correct? |
| Rivers: | For the third time, sir, there never was a written statement, we taped her. |
| Defense: | Okay. |

[Entry #19-2 at 56-59].

16

On redirect, the solicitor asked the following:

| Solicitor: | Mr. Walters asked you about Rule Five and discovery, do you remember that? |
|---|---|
| Rivers: | Yes. |
| Solicitor: | Are you aware that the taped statement has been given to the defense, correct? |
| Rivers: | Yes, it has. |
| Solicitor: | He has it. |

[Entry #19-2 at 60].

In the state's closing, the solicitor stated:

Cotina Brooks. He attacked Cotina Brooks for absolutely nothing. When you don't like the facts you yell at a witness. When you don't like the truth you attack the police. That's not evidence. You saw Cotina, she was nervous, you heard detective Rivers, he's seen hundreds of witnesses. They are nervous, they get nervous. She didn't give a written statement, she gave a typed statement. But do you remember what else you got to learn, only on redirect? Remember on cross examination Mr. Walters hammered her about discovery, and not getting this, and not getting a statement. Then you find out, on redirect, her statement is on tape. And guess who had that tape all along? The defense has it. They didn't want you to know that. It's on tape.

| Defense: | Your Honor, I'm going to object. |
|---|---|
| Solicitor: | That came out at trial, Your Honor. Ladies and --- |
| The Court: | Wait a minute. Y'all approach the bench. |

[Entry #19-3 at 6-7].

Later, defense counsel put his objection on the record, explaining:

[I]t's a violation of my client's Fifth Amendment right and Sixth Amendment right to infer that we agreed to something that was said within this trial. And there's a disagreement about what the testimony was [but] the point is that my client doesn't have to agree or deny anything. Under the Fifth Amendment he has the right to simply say nothing. And that was what was done in the closing argument. They had the tape, they were aware they had the tape. Any inference, any fact that's put before this Court is in dispute and we do not have to come forward and refute anything.

[Entry #19-3 at 37-38].

Discussing the solicitor's closing argument with the court, defense counsel stated, "[t]he accusation was that we agreed that we had this tape, we had it all along. Rivers was on the stand and we inquired as to this tape, and of course, the solicitor asserted that this copy of the tape, did you give it to them?" [Entry #19-3 at 38]. The trial court then interjected stating "[a]nd didn't he say yes?," to which defense counsel explained he wasn't sure of Rivers' testimony on the issue. *Id.* The trial court then issued its ruling stating:

> My recollection is that he said, yes. And I think that—I don't see how his comments during the closing would affect his right to remain silent, or affect the burden of the State, I just can't make that connection. I mean, he didn't say anything other than that there was a tape. And there was of course, an awful lot to do made about what kind of statement that she made and under what circumstances she made that tape. And so, I think that it was a proper question, it was not objected to, at any rate, and the reference that he made to that, I don't find to be improper. So, I note your exception on that issue, but I overrule that also.

[Entry #19-2 at 39].

Petitioner argues that the solicitor's comments (i.e., "And guess who had that tape all along? The defense has it. They didn't want you to know that. It's on tape.") unconstitutionally commented on Petitioner's right to remain silent and right not to present a defense, citing *Griffin v. California*, 380 U.S. 609 (1965).

The South Carolina Supreme Court granted certiorari on this question, dispensed with further briefing, and denied Petitioner relief in a memorandum opinion. Respondent argues the state courts' determinations were not unreasonable, as the context of the

statement demonstrates the solicitor's references in closing argument did not amount to a commentary on Petitioner's rights, but instead, as found by the trial court, accurately recounted Rivers' testimony regarding disclosure of the tape to the defense. Petitioner argues that the solicitor's comment goes beyond arguing the record because he stated that the defense "didn't want you to know" about the recorded statement, thereby asking the jury to draw a negative inference from the defense's decision to not offer the evidence directly.

The undersigned agrees with Respondent. A review of the record reflects the solicitor's reference to the tape during closing arguments addressed testimony already in the record, namely, that Rivers had turned the tape over to defense counsel. (App. 240). The undersigned further agrees with Respondent that even if the solicitor's arguments could somehow be construed as a comment upon Petitioner's rights, the comment was not used as substantive evidence of Petitioner's guilt, but in response to defense counsel's allegations that the state failed to disclose Brooks' statement to the defense prior to trial. *See U.S. v. Robinson*, 485 U.S. 25, 34 (1988)("it is one thing to hold … that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence"). While Petitioner argues that defense counsel "*never* took the position that the State was hiding the recorded interview," [Entry #26 at 9(emphasis in original)], but was only in response to Brooks' testimony that she had provided an

additional handwritten statement to Rivers, the foregoing excerpt of the trial transcript does not support Petitioner's strained position. Defense counsel clearly alleged that the state had withheld a statement from Brooks. That defense counsel himself may have been confused about the source of the statement (written v. recorded or transcribed) does not negate the allegation that the state withheld a statement from the defense.

After a review of the record, the court finds that Petitioner fails to show that the South Carolina Supreme Court unreasonably applied federal law or made an unreasonable determination of the facts in addressing this claim. Therefore, the undersigned recommends dismissal of this issue.

### 3. Merits Review of Ground Three

During the trial, defense counsel requested the jury be charged on the lesser-included offense of voluntary manslaughter because there had been a prior confrontation between Petitioner and the victim before Petitioner shot him. The trial court denied the request. In Ground Three, Petitioner argues his right to effective assistance of counsel was violated when his counsel failed to require the victim's toxicology report be included in the stipulation to the jury that the victim died as a result of the gunshot wounds. Petitioner argues that the toxicology report would have shown the victim was under the influence of cocaine and alcohol at the time of his death, and if counsel had this information within the stipulation, it would have supported Petitioner's request for a jury charge on voluntary manslaughter by providing sufficient evidence of legal provocation.

At PCR, defense counsel testified that he didn't believe that the evidence would have warranted a voluntary manslaughter charge because "[i]f you're high on cocaine and you consume alcohol … [h]ow is that issue relevant to the fact that [Petitioner] walked over and shot a man that was unarmed?" PCR App. p. 433, lines 15-21. The PCR court agreed with defense counsel's testimony and found that defense counsel was not ineffective because it "fail[ed] to see how the victim's drug use would have been relevant given the facts of this case." PCR App. p. 459.

The PCR court found as follows:

This Court does not find Mr. Walters ineffective for stipulating to having the trial judge read the pathology report into the record. Additionally, this Court does not find the outcome of Applicant's trial would have been changed had the report not been read on the record. Likewise, this Court fails to see that the victim's drug use would have significantly affected the outcome of this trial. Clearly, as Mr. Walters stated, this was an eye-witness and credibility issue. This Court further finds that it was not error for the trial judge to read the report into the record. The judge was not testifying and not offering any portion of the report for the truth of the matter asserted. Simply, he was stating that the jury should consider the report as if the pathologist was present in the courtroom and testifying to the results. The Court further does not find err in the fact that Mr. Walters did not employ a pathologist or a toxicologist to testify on his client's behalf. This Court fails to see how the victim's drug use would have been relevant given the fact of the case.

(App. 458-59). Petitioner appealed and the South Carolina Supreme Court denied certiorari.

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694

(1984). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.* The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' ... [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (*quoting Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of

fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id., quoting Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

Petitioner argues that the toxicology evidence would have warranted a voluntary manslaughter charge. Respondent contends that Petitioner's claim should be denied as premised upon the interpretation of state law, namely whether Petitioner was entitled to an instruction on voluntary manslaughter in light of the additional evidence contained within the toxicology report. The state courts found that the additional evidence that the victim had drugs and alcohol in his system did not have any bearing on whether Petitioner was entitled to a voluntary manslaughter charge.

The undersigned finds that Petitioner has failed to show the state courts unreasonably applied federal law when it found counsel's performance was not ineffective for failing to include the toxicology report within the stipulation. Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination that Petitioner was not entitled to a charge on voluntary manslaughter. A voluntary manslaughter charge requires demonstration of either sudden heat of passion or sufficient legal provocation. As the PCR court noted, all of the evidence indicated that victim was arguing with another individual (Gooden), when Petitioner, without any provocation, shot the victim twice. As noted by the PCR court, the fact that the victim had cocaine and

alcohol in his system does not establish under the facts of this case, sudden heat of passion or sufficient legal provocation to warrant a voluntary manslaughter charge.

Because Petitioner cannot show he was entitled to relief upon this claim of ineffective assistance of counsel, he cannot establish the denial of relief was the result of an unreasonable application of federal law. Thus, he is not entitled to federal habeas relief under 28 U.S.C. § 2254(d)(1).

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [Entry#18] be granted and Petitioner's motion to stay [Entry #17] be denied.

IT IS SO RECOMMENDED.

August 1, 2012                                                  Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).